UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ERIC H. SOLSTEIN,

                              Plaintiff,

              v.

ERNESTO MIRRA, *et al.*,

                              Defendants.

No. 18-CV-9875 (KMK)

OPINION & ORDER

APPEARANCES:

Eric H. Solstein
Jackson Heights, NY
*Pro se Plaintiff*

Christine M. Piracci, Esq.
David L. Posner, Esq.
McCabe & Mack LLP
Poughkeepsie, NY
*Counsel for Defendant Thomas Senator*

KENNETH M. KARAS, United States District Judge:

        Pro se Plaintiff Eric H. Solstein ("Plaintiff") brings this Action against Ernesto Mirra

("Mirra") and Thomas Senator ("Senator" or "Moving Defendant"; with Mirra, "Defendants"),

asserting claims of defamation and, specifically, libel per se.  (*See* Second Am. Compl. ("SAC")

(Dkt. No. 31).)  Before the Court is Moving Defendant's Motion To Dismiss the Second

Amended Complaint ("SAC"), pursuant to Federal Rule of Civil Procedure 12(b)(6) (the

"Motion").  (*See* Moving Def.'s Not. of Mot. (Dkt. No. 34).)  For the reasons to follow, Moving

Defendant's Motion is denied.

I.  Background

A.  Factual Background

The following facts are drawn from Plaintiff's SAC, the exhibits attached to it, and Plaintiff's Response to the Motion, and are assumed to be true for the purpose of resolving the instant Motion.[1]

On January 12, 2015, after a hearing in family court in New York, Plaintiff received an order "obliging [him] to vacate [his] family residence in Manhattan and relocate to what had served as his family's summer house" in Bethel, New York.  (SAC ¶ 1.)  Thereafter, Plaintiff began to "engage with local residents for discussion and debate" "[f]or [his] enjoyment and

---

[1] Given that Plaintiff is proceeding pro se, the Court properly considers facts asserted in his Opposition papers, as well as documents attached to those papers, to the extent that those facts are consistent with the SAC.  *See Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (noting that it is appropriate to consider "documents that a pro se litigant attaches to his opposition papers); *Donahue v. U.S. Dep't of Justice*, 751 F. Supp. 45, 49 (S.D.N.Y. 1990), *abrogated on other grounds by Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004) (stating that facts asserted in a pro se plaintiff's opposition could be considered on a motion to dismiss, as long as consistent with the facts asserted in the complaint).

Conversely, the Court will not consider the exhibits submitted by Moving Defendant, which are additional social media posts.  Moving Defendant argues that Plaintiff referenced "years of abuse" that have occurred on social media in his SAC, and thus, he has incorporated these additional posts by reference.  (Moving Def.'s Mem. in Supp. of Mot. ("Def.'s Mem.") 4 (Dkt. No. 37).)  However, Plaintiff does not specifically reference, let alone rely upon, any of these communications, which have therefore not been incorporated into the SAC.  *See Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) ("Limited quotation or reference to documents that may constitute relevant evidence in a case is not enough to incorporate those documents, wholesale, into the complaint."); *see also Ganske v. Mensch*, No. 19-CV-6943, 2020 WL 4890423, at *2 (S.D.N.Y. Aug. 20, 2020) (declining to consider tweets submitted by the defendant in a defamation action that occurred prior to the date of the alleged defamatory statement because "[w]hile the two other tweets posted by [the] defendant th[e] morning [of the statement] provide[d] essential context[,] . . . tweets posted in the days and months prior . . . d[id] not offer the same immediate relevance").

Nor will the Court convert Defendant's Motion to one for summary judgment.  "[N]otice is particularly important for a pro se litigant, who must be unequivocally informed of the meaning and consequences of conversion to summary judgment."  *Parada v. Banco Indus. De Venez., C.A.*, 753 F.3d 62, 68 (2d Cir. 2014) (citation and quotation marks omitted).  Thus, the Court will decide the instant Motion on the basis of the SAC and Plaintiff's other submissions.

commitment to progressive politics" on a Facebook page titled "Sullivan County Uncensored," which Plaintiff states was a page "seemingly dedicated to 'free speech.'" (*Id.* ¶¶ 2–3.) Plaintiff also describes the page as "oriented towards a right-wing political perspective." (Pl.'s Mem. in Opp'n to Mot. ("Pl.'s Mem.") 3 (Dkt. No. 45).) This Facebook page has over 10,000 subscribers, which, according to Plaintiff, comprises approximately 10 percent of the total population of Sullivan County. (SAC ¶ 2.) The page is "edited, administered, moderated, and under the complete editorial control" of Larry Gold, a "Sullivan County attorney." (*Id.* ¶ 3.) On an unknown date, Plaintiff was removed from "Sullivan County Uncensored" and stopped participating in it. (*Id.* ¶ 4.) Plaintiff instead began to "spen[d] [his] time" on a page titled "Sullivan County Post," (*id.*), which was "notably non-partisan in its political orientation," (Pl.'s Mem. 4). He alleges that Defendants "followed [him]" to this page, and "encourag[ed] others to join in." (SAC ¶ 4.)

On October 2, 2017, Plaintiff was arrested for assault. (*Id.* ¶ 5.) On October 9, 2017, the Village of Liberty Police Department posted a press release that included Plaintiff's "booking photograph" on their Facebook page. (*Id.*)[2] "Shortly after" this post, "the local pages exploded with news of [Plaintiff's] arrest." (Pl.'s Mem. 4.) For example, Plaintiff's photograph was "passed around and turned into insulting memes . . ., with additional commentary added." (*Id.*)

On October 9, 2017, Erik Rhulen ("Rhulen"), a licensed realtor, posted a photograph that he took of police cars in Plaintiff's driveway on Facebook. (SAC ¶ 6; *id.* Ex. A ("Oct. 9, 2017 Post A") (Dkt. No. 31).) Along with the photograph, Rhulen posted the comment, "I have seen cops in [Plaintiff's] driveway numerous times. They were there for a heroin[] overdose. I hear

---

[2] Plaintiff states in his Response that the Village of Liberty Police Department posted his photograph on Facebook on October 10, 2017. (Pl.'s Mem. 4.)

he is a known drug dealer."  (SAC ¶ 6; Oct. 9, 2017 Post A.)  Senator replied, "[W]ow.

Really!?," and, "Are you sure they are 'his' children[,] or is he running an underage crack whore

brothel?"  (*Id.*; SAC Ex. B ("Oct. 9, 2017 Post B") (Dkt. No. 31).)  According to Plaintiff, the

police have never come to his property over fights with his children, and he has never dealt

drugs.  (SAC ¶ 6.)  Rhulen also posted a comment that stated "Market Value $271,000," with an

image that included Plaintiff's house, his address, and "various data to support that valuation."

(*Id.* ¶ 7; Oct. 9, 2017 Post B.)  According to Plaintiff, Rhulen had previously expressed interest

in representing Plaintiff's property, and several months prior to this post, he had sold a "nearly

identical property" that abutted Plaintiff's home for over $580,000.  (SAC ¶ 7.)  Senator

commented on Rhulen's post, writing, "Yeh [sic], I guess the property value goes down the tubes

when it's known the house you want to purchase is from a child-abusing crack dealing arshole

[sic] . . . who wants to live there?"  (*Id.* ¶ 8; Oct. 9, 2017 Post B.)  According to Plaintiff, he has

never dealt crack or abused children.  (SAC ¶ 8.)[3]  Senator also posted in the same string of

comments what appears to be a photo of Plaintiff's mugshot with the comment, "Found this in

the [Sullivan County] group hahahahahaha[.]  Crack head Slasher."  (SAC Ex. C ("Oct. 9, 2017

Post C") (Dkt. No. 31).)  Plaintiff alleges that these exchanges took place on the "Sullivan

County Post" Facebook page.  (Pl.'s Mem. 9.)

Plaintiff "repeatedly attempted" to have Gold "edit and control" the Facebook page he

controlled.  (SAC ¶ 9.)[4]  However, on October 9, 2017, Gold wrote on Facebook, "The lesson to

---

[3] According to Plaintiff, Defendants "and other parties" had "sporadically" accused him
of "heinous crimes," (SAC ¶ 5), and Moving Defendant had specifically "previously attacked
[Plaintiff] on Face[b]ook numerous times," (*id.* ¶ 8).

[4] Plaintiff attaches to the SAC a conversation that appears to be between himself and
Gold, where Plaintiff instructed Gold, "I want you to do the right thing and not allow . . .
horrendous libel to take place with your oversight."  (SAC Exs. D ("Gold Facebook

learn is that if you run your piehole on Facebook, don't succumb to crack addiction. Allegedly. Not cool when the crack whore you're in love with is caught with 'Pepe' in Honduras at 5:00 a[.]m. Allegedly. Pathetic that he has to call his wife, the lady he's allegedly cheating on, and ask her to bail him out. Allegedly. This is karma in the truest sense. Maybe he will learn a lesson to shut the fuck up." (*Id.*) Plaintiff represents that he is not addicted to crack. (*Id.*)[5]

Also on October 9, 2017, Mirra impersonated Plaintiff by "stealing [his] identity" and creating Facebook pages under his name that "implicate[d] [Plaintiff] as a predator of children." (*Id.* ¶ 10.) Mirra did so "in collaboration with . . . Senator." (*Id.*) Mirra also "used a variety of aliases, including: James DelGado, Joey Arturo, [and] Sherry Lando" while on Facebook. (*Id.* ¶ 10 (record citations omitted).) Under the name James DelGado, Mirra wrote, "He done fucked up with me. He thought I was some good ol['] boy that was lying about everything. . . . He got real [sic] quiet soon after accusing me too because it['s] my understanding they told him he needs to cut the shit. They already knew me but he [is] the sex trafficking falsifying phony fool." (*Id.*) Additionally, Mirra posted under the same name, "He's also a chester to [sic] what I hear." (*Id.*) According to Plaintiff, "chester" is "widely understood slang for child molester." (*Id.*)

---

Conversation A"), E ("Gold Facebook Conversation B") (Dkt. No. 31).) Gold suggested in response that "other, lighter pages . . . may be a better fit for you so [you're] not so stressed and so [yo]u wouldn['t] have to report every argument." (*Id.*) Plaintiff reiterated to Gold that he believed he had been "accus[ed] of a heinous crime," and that he was experiencing "libel by any definition." (*Id.*) These conversations appear to have occurred in or around March 2016, based on the time stamps on the Exhibit. (*Id.*; Gold Facebook Conversation B.)

[5] Plaintiff states that Gold's "ongoing use of the word 'allegedly' . . . refer[s] . . . to the allegations made by [Gold] and his friends . . . because no credible authority has ever endorsed such allegations." (TAC ¶ 9.)

Plaintiff alleges that generally, over the course of two years prior to October 9, 2017, he was "constantly defamed" and by October 2017, had blocked over 60 residents of Sullivan County and group members of "Sullivan County Uncensored" on Facebook. (*Id.* ¶ 11.) During this time, Plaintiff received repeated threats of violence over the internet, "feces [sent] via the USPS," "direct threats" in his mailbox, and text messages that contained "vulgar hate and anti-Semitism." (*Id.*) Plaintiff was also "doxed," which he describes as "internet slang for having one's address or personal photos and information publicly revealed." (*Id.*) Plaintiff sought assistance from the New York State "Trooper barracks" in the Village of Liberty and was referred to an officer in charge of cybercrime. (*Id.*) Plaintiff alleges that this officer was "entirely disinterested" and did not investigate his allegations. (*Id.*) According to Plaintiff, he continues to undergo "abuse and defamation." (*Id.* ¶ 12.) For example, in October 2019, Plaintiff was called a "pedophile" during a "discussion of candidates for County Judge"; he has suffered "repeated traffic stops by [New York State] Troopers in the weeks before [his] decision to accept [a] plea agreement [from the District Attorney]"; and his "then[-]girlfriend, Megan Dowe," who would have been a "witness in [his] case," was subject to "repeated stops and arrests." (*Id.*) Plaintiff alleges that the deputies at the Sullivan County Sheriff's Office and the "Bethel Constable" made a "concerted effort" to harass him and advise him not to use his local post office and P.O. box "for fear [he] might molest the 20 year old woman who worked there." (*Id.*) Plaintiff further contends that James Farrell ("Farrell"), the Sullivan County District Attorney, has been influenced by complaints and reports that his office has received from "citizens outraged at the crimes [Plaintiff] supposedly committed," and that this "gossip" has "influenced [Plaintiff's] prosecution in an unfair manner," by, for example, delaying the resolution of his "minor charge" for two years. (*Id.* ¶ 13.) Farrell has also "assum[ed] direct

control of [Plaintiff's] recent assault charge." (*Id.*)   Finally, Plaintiff generally alleges that Defendants have "conspired with persons of interest" over text message "by contacting third parties," and that they "creat[ed] a shared fake narrative and set of practices that allowed them to work in concert without external communication." (*Id.* ¶ 15.)

Plaintiff claims that as a result of Defendants' posts, he has been "exposed to public contempt, ridicules, [and] aversion," and "right-thinking people" now have an "evil opinion" of him. (*Id.* ¶ 14.)   Plaintiff also states that he has been "deprived of . . . friendly intercourse in society." (*Id.*)   Plaintiff seeks a total of $2,000,000 from each Defendant in damages. (*Id.* at 12.)

B.  Procedural Background

Plaintiff filed his initial Complaint on October 24, 2018. (Compl. (Dkt. No. 1).)  At the time, Plaintiff was incarcerated at Sullivan County Jail, (*see id.*), from which he has since been released.  By Order dated October 29, 2018, Chief Judge Colleen McMahon ("Judge McMahon") directed Plaintiff to pay the filing fee or submit an application to proceed without prepayment of fees, that is, in forma pauperis ("IFP").  (Dkt. No. 3.)  On November 26, 2018, the Court received $400.00 from Plaintiff, (*see* Dkt. (entry for Nov. 26, 2018)), although Plaintiff had already submitted an application to proceed IFP, (*see* Dkt. Nos. 5–6; *see also* Order To Show Cause ("Jan. 17, 2019 Order") 1 n.1 (noting that Plaintiff's IFP application was "unnecessary at this time," given Plaintiff's payment of the filing fee) (Dkt. No. 11)).

On January 17, 2019, Judge McMahon issued an Order To Show Cause, directing Plaintiff to show cause why his Complaint should not be dismissed for lack of subject matter jurisdiction, given that the Complaint included only claims under state law and that two of the Defendants allegedly lived in New York, which precluded complete diversity of citizenship. (*See* Jan. 17, 2019 Order 5–6.)  On February 26, 2019, Plaintiff filed an Amended Complaint,

naming only Mirra and Senator as Defendants, who he alleges live in New Jersey.  (Dkt. No. 12.)

The Action was reassigned to this Court on March 21, 2019, and an Order of Service was issued

on April 16, 2019, directing Plaintiff to serve the summons and Amended Complaint on Mirra

and Senator within 90 days of issuance of the summons.  (*See* Dkt. (entry for Mar. 21, 2019);

Dkt. No. 14.)[6]  On August 22, 2019, after receiving a letter from Plaintiff, (Dkt. No. 23), the

Court directed Plaintiff to "advise the Court . . . if he want[ed] to file a[] [second] amended

complaint," in light of certain statements made in his letter, (Dkt. No. 24).  Plaintiff thereafter

informed the Court on August 29, 2019 that he would begin to work on a second amended

complaint "immediately."  (Dkt. No. 25.)

By October 22, 2019, Plaintiff had not filed a second amended complaint, and the Court

issued an Order To Show Cause as to why the Action should not be dismissed for failure to

prosecute.  (Dkt. No. 28.)  Plaintiff filed a response on November 22, 2019, (Dkt. No. 29), and

the Court instructed Plaintiff to file a second amended complaint by December 15, 2019, (Dkt.

---

[6] Mirra has not appeared in this Action.  (*See generally* Dkt.)  According to Plaintiff, he has attempted service on Mirra "multiple times," but Mirra has "refused to respond to the process servers."  (Pl.'s Mem. 5; *see also* Not. of Service 2 (stating that a "paid process server" attempted to serve Mirra at his "correct home address" on "three separate occasions") (Dkt. No. 54).)  Plaintiff represents that he sought assistance from New York Legal Assistance Group and was instructed to "follow[] their recommendation for service by mail according to [New York State] Rules of Civil Procedure."  (Pl.'s Mem. 5.)  On July 14, 2020, Plaintiff filed a Notice of Service, stating that he served Mirra with the summons and SAC via mail, which were delivered on February 25, 2020, but that Mirra has never "made any effort to communicate or respond to service in any way."  (Not. of Service 3–4.)

Plaintiff requests that "permission from the Court to file a [m]otion for [s]ummary [j]udgment against . . . Mirra."  (*Id.* at 4.)  Because Plaintiff appears to have attempted to serve Mirra, who has failed to file an answer or otherwise appear, Plaintiff may consider seeking a default judgment against him.  *See Thompson v. Booth*, No. 16-CV-3477, 2018 WL 4760663, at *12 (S.D.N.Y. Sept. 28, 2018) (stating that the court could enter default judgment against defendants who had been served but had failed to appear"); *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 332 (S.D.N.Y. Sept. 9, 2014) (instructing the plaintiff to consider seeking a default judgment against a defendant who had been served but failed to appear).

No. 30).  On December 13, 2019, Plaintiff filed the SAC.  (*See generally* SAC.)  On January 9,

2020, Moving Defendant filed a pre-motion letter, seeking to file a motion to dismiss.  (Dkt. No.

32.)  Plaintiff did not file a response to the letter, and the Court set a briefing schedule on

January 22, 2020.  (Dkt. No. 33.)

Moving Defendant filed the instant Motion on February 28, 2020.  (*See* Not. of Mot.;

Def.'s Mem.; Aff. of Christina Piracci, Esq. in Supp. of Mot. ("Piracci Aff.") (Dkt. No. 36).)  On

April 3, 2018, Plaintiff requested an extension on his deadline to file a response.  (Dkt. No. 40.)

The Court directed Plaintiff to do so by June 8, 2020.  (Dkt. No. 41.)  On June 17, 2020, Moving

Defendant requested that the Court "reject[]" any response by Plaintiff as untimely, or, in the

alternative, give Moving Defendant an extension to file a reply.  (Dkt. No. 43.)  Given that

Moving Defendant represented that Plaintiff's response was forthcoming, (*id.*) the Court denied

Moving Defendant's request to reject that response, but granted Moving Defendant's request for

an extension to file his reply.  (Dkt. No. 44.)  Plaintiff filed his Response on June 24, 2020, (Pl.'s

Mem.), along with a letter requesting that the Court accept the late-filed Response, (Dkt. No. 47),

which the Court agreed to do, (Dkt. No. 48).  After receiving an additional extension from the

Court, (Dkt. No. 51), Moving Defendant filed his Reply on July 10, 2020, (Def. Senator's Reply

Mem. in Supp. of Mot. ("Def.'s Reply") (Dkt. No. 53)).

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "Nor does a complaint suffice if it

tenders naked assertions devoid of further factual enhancement."  *Id.* (alteration and quotation

marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to

relief above the speculative level."  *Twombly*, 550 U.S. at 555.

Although "once a claim has been stated adequately, it may be supported by showing any

set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must

allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a

plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[]

complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a

complaint states a plausible claim for relief will . . . be a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense.  But where the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation

omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8

marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior

era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than

conclusions.").

In considering the Motion, the Court is required to "accept as true all of the factual

allegations contained in the [TAC]."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also*

*Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same).  And, the Court must "draw[] all

reasonable inferences in favor of the plaintiff."  *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d

302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Intern. PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Where, as here, a plaintiff proceeds pro se, the Court must "construe[ ] [the complaint] liberally and interpret[ ] [it] to raise the strongest arguments that [it] suggest[s]."  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted).  However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law."  *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (citation and quotation marks omitted).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (citation and quotation marks omitted).  However, when the plaintiff is pro se, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (citation and quotation marks omitted), including, "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), and "documents that the plaintiff[ ] either possessed or knew about and upon which [he or she] relied in bringing the suit," *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (citation omitted).

B.  Analysis

Moving Defendant argues that Plaintiff has failed to state a claim for libel because his statement was an opinion, (Def.'s Mem. 7–13); Plaintiff has failed to establish that the statement

11

was published, (*id.* at 13–15); Plaintiff has not stated a claim for libel per se, (*id.* at 15); (iv)

Plaintiff has failed to plead special damages, (*id.* at 16–18).

1.  Applicable Law

"Defamation, consisting of the twin torts of libel and slander, is the invasion of the

[plaintiff's] interest in a reputation and good name." *Albert v. Loksen*, 239 F.3d 256, 265 (2d

Cir. 2001) (citation omitted).  Specifically, a defamatory statement is one that "exposes an

individual to hatred, shame, obloquy, contumely, odium , contempt, ridicule, aversion, ostracism,

degradation, or disgrace," or one that would "induce[] an evil opinion of one in the minds of

right-thinking persons," and deprive the plaintiff of "confidence and friendly intercourse in

society." *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 177 (2d Cir. 2000) (alteration

and quotation marks omitted).  Because Plaintiff's defamation allegations turn on statements

posted by Moving Defendant on Facebook, his is a claim of libel.  *See Albert*, 239 F.3d at 265

(explaining that "[g]enerally, spoken defamatory words are slander; written defamatory words

are libel").  "Under New York law, a plaintiff must establish five elements to recover in libel: (1)

a written defamatory statement of fact concerning the plaintiff; (2) publication to a third party;

(3) fault (either negligence or actual malice depending on the status of the libeled party); (4)

falsity of the defamatory statement; and (5) special damages or per se actionability (defamatory

on its face)." *Celle*, 209 F.3d at 176.

"Whether particular words are defamatory presents a legal question to be resolved by the

court[] in the first instance." *Id.* at 177 (citations omitted).  Accordingly, courts should evaluate

each allegedly defamatory statement to determine whether it is actionable at the pleading stage.

*See Biro v. Conde Nast*, 883 F. Supp. 2d 441, 458 (S.D.N.Y. 2012) (explaining that "the [c]ourt

[would] evaluate each allegedly defamatory statement (or set of statements) and determine

whether it is actionable, granting dismissal of claims based on nonactionable statements and denying dismissal with respect to claims based on actionable statements"); *Armstrong v. Simon & Schuster, Inc.*, 649 N.E.2d 825, 892 (N.Y. 1995) ("Where a plaintiff alleges that statements are false and defamatory, the legal question for the court on a motion to dismiss is whether the contested statements are reasonably susceptible of a defamatory connotation.").

"Under New York law, words are per se defamatory if they import criminal activity, impute certain types of diseases, tend to injure a party's trade, occupation, or business, or impute certain sexual conduct." *Campanella v. County of Monroe,* 853 F. Supp. 2d 364, 371 (W.D.N.Y. 2012) (citing *Epifani v. Johnson,* 882 N.Y.S.2d 234, 242 (App. Div. 2009)); *see also Albert*, 239 F.3d at 271 ("The four categories of statements that have historically constituted slander per se in New York are those that (i) charge the plaintiff with a serious crime; (ii) tend to injure the plaintiff in his or her trade, business or profession; (iii) imply that the plaintiff has a loathsome disease; or (iv) impute unchastity to a woman," (citing *Liberman v. Gelstein*, 605 N.E.2d 344, 347 (N.Y. 1992))). "The issue of whether a statement is actionable per se is for the court." *Id.*; *see also Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.,* 14 F. Supp. 3d 191, 214 (S.D.N.Y. 2014) (same).

2. Application

a. Statements of Opinion

Plaintiff asserts that his "cause of action for [l]ibel [p]er [s]e" is based on Moving Defendant's Facebook comment stating, "Yeh [sic], I guess the property value goes down the tubes when it's known the house you want to purchase is from a child-abusing crack dealing arshole [sic] . . . who wants to live there?" (SAC ¶ 8.) According to Plaintiff, he has "never been a crack dealer []or child abuser." (*Id.*) Moving Defendant argues that his statement is a

non-actionable opinion because he was merely reacting and responding to Rhulen's statement

that the police had come to Plaintiff's home when he was "fighting with his children" and when

there had been a "heroin[] overdose," and that Mr. Rhulen had "hear[d] [Plaintiff] is a known

drug dealer."  (Def.'s Mem. 8; SAC ¶ 6.)

  "[O]nly factual statements are actionable as defamation or libel . . . because New York

law protects derogatory statements which may be categorized as 'opinion' as opposed to 'fact.'"

*Chau v. Lewis*, 771 F.3d 118, 128 (2d Cir. 2014).  "Determining whether a statement is an

allegation of fact or mere opinion is a legal question for the court."  *Id.*  "The dispositive inquiry

is whether a reasonable reader could have concluded that the statements were conveying facts

about the plaintiff."  *Davis v. Boeheim*, 22 N.E.3d 999, 1005 (N.Y. 2014) (citation, alterations,

and quotation marks omitted).  To determine whether a statement is one of opinion or fact, courts

look to four factors: "(1) whether the specific language in issue has a precise meaning which is

readily understood or whether it is indefinite and ambiguous; (2) a determination of whether the

statement is capable of being objectively characterized as true or false; (3) an examination of the

full context of the communication in which the statement appears; and (4) a consideration of the

broader social context or setting surrounding the communication[,] including the existence of

any applicable customs or conventions which might signal to readers or listeners that what is

being read or heard is likely to be opinion, not fact."  *Kirch v. Liberty Media Corp.*, 449 F.3d

388, 402 n.7 (2d Cir. 2006) (citation and quotation marks omitted); *see also Chau*, 771 F.3d at

128–29 (same).  "[C]ourts should not consider the statement in question in isolation, but must

analyze statements 'in the context of the entire communication and of the circumstances in which

they were written.'"  *Pisani v. Staten Island Univ. Hosp.*, No. 06-CV-1016, 2008 WL 1771922,

at *12 (E.D.N.Y. Apr. 15, 2008) (alterations omitted) (quoting *Celle*, 209 F.3d at 179); *see also*

*Davis*, 22 N.E.3d at 1005 (instructing that a court should not "sift[] through a communication for the purpose of isolating and identifying assertions of fact," and that a court should instead "look to the [overall] context in which the assertions were made and determine on that basis whether the reasonable reader would have believed that the challenged statements were conveying facts about the plaintiff" (alteration and quotation marks omitted)).  A court need not "strain to interpret writings in their mildest and most inoffensive sense to hold them non[-]libelous," *Biro*, 883 F. Supp. 2d at 457 (alteration and quotation marks omitted) (quoting *November v. Time Inc.*, 194 N.E.2d 126, 128 (N.Y. 1963)), but also should not "render statements actionable by giving them a 'strained or artificial construction,'" *Qureshi v. St. Barnabas Hosp. Ctr.*, 430 F. Supp. 2d 279, 287 (S.D.N.Y. 2006) (quoting *Dillon v. City of New York*, 704 N.Y.S.2d 1, 5 (App. Div. 1999)).

"[I]f a statement is found to contain opinion, the court must next determine whether the statement is 'pure opinion' (and thus non-actionable) or 'mixed opinion' (and therefore actionable)." *Chau*, 771 F.3d at 129.  "Pure opinion is a statement of opinion which is accompanied by a recitation of the facts upon which it is based or does not imply that it is based on undisclosed facts," *id.* (quotation marks omitted); *see also Biro*, 883 F. Supp. 2d at 461 (same).  A statement of "mixed opinion," on the other hand, "is an opinion that does imply a basis in undisclosed facts, or facts known only to the author." *Chau*, 771 F.3d at 129.  While statements of "mixed opinion" are actionable, *see id.*, "New York law absolutely protects statements of 'pure opinion,' such that they can never be defamatory," *Kirch*, 449 F.3d at 402 (quotation marks omitted); *see also Vinas v. Chubb Corp.*, 499 F. Supp. 2d 427, 435 (S.D.N.Y. 2007) (same).  "This is because a statement of opinion is not an assertion of fact that can be proved false, and '[a]n assertion that cannot be proved false cannot be held libelous.'" *Biro*, 883

F. Supp. 2d at 459–60 (quoting *Hotchner v. Castillo-Puche*, 551 F.2d 910, 913 (2d Cir.1977));

*see also Gross v. N.Y. Times Co.*, 623 N.E.2d 1163, 1168 (N.Y. 1993) ("[A] proffered hypothesis

that is offered after a full recitation of the facts on which it is based is readily understood by the

audience as conjecture.").

      The Court does not disagree with Moving Defendant that here, there are certain indicators

that his statement is, at least in part, an opinion based on Rhulen's post.  For example, when

Rhulen posted that the police had come to Plaintiff's home when he was fighting with his

children, and that Rhulen had heard that Plaintiff was a "known drug dealer," Moving Defendant

responded, "[W]ow.  Really?!"  (Oct. 9, 2017 Post B.)  Moving Defendant also begins the

statement at issue with the phrase, "Yeah, I guess . . . ."  (*Id.*)  *See Bellavia Blatt & Crossett,*

*P.C. v. Kel & Partners LLC*, 151 F. Supp. 3d 287, 293–95 (E.D.N.Y. 2015) (noting that

"rhetorical indicators," such as word choice, inform an inquiry into whether a statement is an

opinion); *Biro*, 883 F. Supp. 2d at 460 ("When the defendant's statements, read in context, are

readily understood as conjecture, hypothesis, or speculation, this signals the reader that what is

said is opinion, and not fact." (quotation marks omitted) (quoting *Levin v. McPhee*, 119 F.3d

189, 197 (2d Cir. 1997)).  Moving Defendant further asked what appears to be a rhetorical

question before making the statement at issue, inquiring, "Are you sure they are 'his' children[,]

or is he running an underage crack whore brothel?"  (Oct. 9, 2017 Post B.)  *See Sandals Resorts*

*Int'l Ltd. v. Google, Inc.*, 925 N.Y.S.2d 407, 415 (App. Div. 2011) (finding an e-mail to be a

non-actionable opinion when it was "replete with rhetorical questions" and, considered as a

whole, was an "exercise in rhetoric").  However, "on a motion to dismiss, [the Court] consider[s]

whether *any* reading of the [SAC] supports the defamation claim."  *Davis*, 22 N.E.3d at 1006

(emphasis added).   "Thus, although it may well be that the challenged statements are subject to

[Moving Defendant's] interpretation[,] the motion to dismiss must be denied if the communication at issue, taking the words in their ordinary meaning and context, is also susceptible to a defamatory connotation." *Id.* (citation, alterations, and quotation marks omitted).  Construing Plaintiff's claims liberally, the Court finds that the SAC "meet[s] this minimum pleading requirement." *Id.*

It is well-established that "an accusation of criminality that, read in context, is set forth as a fact is not transformed into a nonactionable expression of opinion merely because it is couched 'in the form of [an] opinion.'" *Gross*, 623 N.E.2d at 1169 (noting that the statement "I believe John is a thief" would not be materially different from the statement, "John is a thief" (emphasis omitted)).  However, it is equally true that "even when uttered or published in a more serious tone, accusations of criminality could be regarded as mere hypothesis and therefore not actionable if the facts on which they are based are fully and accurately set forth and it is clear to the reasonable reader or listener that the accusation is merely a personal surmise based upon those facts." *Id.*  Here, Plaintiff's "allegations suggest that [Moving Defendant's] . . . opinion was based on [Plaintiff's] supposed [drug dealing and child abuse]—a statement of fact that may be proven or disproven." *Germain v. M&T Bank Corp.*, 111 F. Supp. 3d 506, 536 (S.D.N.Y. 2015) (citation omitted).[7]  Additionally, Plaintiff alleges that the *facts* upon which Moving

---

[7] Moving Defendant argues that the term "child abuse" "does not have a precise meaning" because it is a "catch[-]all phrase used to encompass different crimes against children," and the New York Family Court Act "defines an abused child based on a multitude of acts or omissions by a parent or guardian, some of which may not be punishable under the [P]enal [C]ode." (Def.'s Mem. 10.)  However, a number courts have found that accusations of abuse may constitute actionable defamatory statements. *See Powell v. Jones-Soderman*, No. 16-CV-1653, 2019 WL 1596369, at *2 (D. Conn. Apr. 15, 2019) (finding that defamatory statements "plainly accuse[d] [the plaintiff] of criminal conduct punishable by imprisonment" under Connecticut law when the defendant alleged that the plaintiff had "physically and sexually abused his daughters" (record citation omitted)); *In re Berlin*, 513 B.R. 430, 436 (Bankr. E.D.N.Y. 2014) (noting that the debtor's defamatory statements included an allegation that one

Defendant's statements were based—that Plaintiff dealt drugs and fought with his children—are false.  "[I]f the predicate facts are disclosed but are false, such that the disparity between the stated facts and the truth would cause a reader to question the opinion's validity, the opinion may be an actionable 'defamatory opinion.'"  *Enigma Software Group USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 281 (S.D.N.Y. 2016) (citation and alteration omitted); *see also Dworin v. Deutsch*, No. 06-CV-13265, 2008 WL 508019, at *3 (S.D.N.Y. Feb. 22, 2008) (explaining that "both the opinion and the facts upon which it is based are false," and therefore, "the opinion and facts may form the basis of a defamation claim"); *Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 377 (S.D.N.Y. 1998) ("[W]here the plaintiff alleges that both the opinions and facts are false, a motion to dismiss should not be granted, and the plaintiff may proceed against both the statements of fact and opinion.").; *H&R Indus., Inc. v. Kirshner*, 899 F. Supp. 995, 1010 (E.D.N.Y. 1995) ("Where the facts [underlying an opinion] themselves are alleged to be false . . . [the] plaintiff may be able to recover damages for defamatory opinions where [the] plaintiff demonstrates that the statements of fact are false and is able to convince the triers of fact that that the factual disparities would affect the conclusions drawn by the average reader regarding the validity of the opinions expressed." (citation and quotation marks omitted)); *Silsdorf v. Levine*, 449 N.E.2d 716, 720–21 (N.Y. 1983) (reinstating a defamation claim based on a letter accusing the former mayor of corruption because the facts stated to demonstrate such

---

of the plaintiffs had "abused" his former wife).  Moreover, New York's Penal Code criminalizes an array of abusive acts against children, and defines an "abused child" as one whose "parent, guardian, or other person legally charged with [his or her] care or custody . . . fails or refuses to exercise reasonable diligence in the control of such child."  N.Y. Penal Law § 260.10(2).

    However, even if Moving Defendant is correct with respect to the term "child abuse," as Moving Defendant recognizes, the term "crack dealer" has a meaning that is "more readily understood."  (Def.'s Mem. 11.)  Thus, the Court does not decide here whether an accusation of "child abuse" is sufficiently precise to support a claim of libel per se.

corruption were allegedly false); *Como v. Riley*, 731 N.Y.S.2d 731 (App. Div. 2001) (reinstating a defamation claim dismissed by the lower court when the defendants' views of the plaintiff were premised on a false fact, alleged in the same e-mail, that "the plaintiff's office cubicle contained a statuette of a black man hanging from a white noose").

Further, "opinions based on false facts are actionable against a defendant who had knowledge of the falsity or probable falsity of the underlying facts." *Restis v. Am. Coalition Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 719 (S.D.N.Y. 2014); *see also DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 114 (2d Cir. 2010) (stating the same, and reversing a district court's dismissal of a defamation claim based on a statement of opinion because the plaintiff alleged that the defendants knew of the falsity of the underlying facts). At this early stage, and construing the SAC liberally, the Court cannot say that Plaintiff has insufficiently alleged that Moving Defendant had such knowledge. For example, Plaintiff alleges that Moving Defendant "repeatedly and unambiguously" made similar allegations against him, (SAC ¶ 8), and also suggests that the conversation between Rhulen and Moving Defendant was "planned or . . . staged," (Pl.'s Mem. 9). These allegations imply that Moving Defendant may have known of the falsity of the accusations upon which he based his own statement. Moreover, "[i]t is well settled that [a defendant] cannot escape liability simply because [he is] conveying someone else's defamatory statements without adopting those viewpoints as [his] own." *Biro*, 883 F. Supp. 2d at 461 (also noting that the Second Circuit has "expressly embraced the 'widely recognized' rule that 'one who republishes a libel is subject to liability just as if he had published it originally'" (quoting *Cianci v. New Times Pub. Co.*, 639 F.2d 54, 60–61 (2d Cir. 1980)); *see also Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144, 152 (2d Cir. 2000) ("[T]he fact that a particular accusation originated with a different source does not automatically furnish a license for others

to repeat or publish it without regard to its accuracy or defamatory character." (citation and

quotation marks omitted)); *Condit v. Dunne*, 317 F. Supp. 2d 344, 364 (S.D.N.Y. 2004)

(although statements were "literally true because [the] defendant clarifie[d] that he [was] merely

retelling stories told to him[,]" the defendant was not "immune from a slander suit" because the

stories themselves [were] false and defamatory"); *Colinatis v. Dimas*, 848 F. Supp. 462, 468

(S.D.N.Y. 1994) (finding that although a letter "purport[ed] to merely relay information" told by

one person to another, the plaintiff's libel claim was actionable if he could prove that the factual

assertions were "actually false").

Additionally, Moving Defendant's statement is not a pure recitation of the "facts" set

forth by Rhulen. While Rhulen stated that the police had come to Plaintiff's home when he was

fighting with his children, Moving Defendant's comment suggests that Plaintiff committed child

abuse, and adds to Rhulen's statement that Plaintiff is a "known drug dealer" the suggestion that

Plaintiff is a "crack dealer." (Oct. 9, 2017 Post A; Oct. 9, 2017 Post B.) *See Goldman v.*

*Reddington*, 417 F. Supp. 3d 163, 175 (E.D.N.Y. 2019) (finding that a defendant could be held

liable for a Facebook message that she screenshotted because she "appear[ed] to take ownership

of it" by posting the screenshot and "adding her own commentary," and because "those who

repeat another's defamatory statements are not sheltered from liability" (record citation and

quotation marks omitted)). Construed liberally, Moving Defendant's statement, and the details

added to Rhulen's initial allegations, could imply the existence of undisclosed facts upon which

Moving Defendant's opinion was based, particularly when Plaintiff alleges that Moving

Defendant has previously made "repeated[] and unambiguous[]" false statements about him. *See*

*id.* at 174 (finding that a text message calling someone a "monster" was an actionable mixed

opinion because the recipient could infer that the name was intended to convey the fact that the

person had raped her because the sender had been "allegedly vocal about her accusations" (record citation omitted)); *Germain*, 111 F. Supp. 3d at 516 (finding that the plaintiff sufficiently alleged slander when the statement that the plaintiff was "no good" allegedly "alluded [to the fact that the plaintiff] had ties to the Albanian mob" (record citation omitted)); *cf. Ratajack v. Brewster Fire Dep't, Inc. of the Brewster-Se. Joint Fire Dist.*, 178 F. Supp. 3d 118, 165 (S.D.N.Y. 2016) (finding that a statement was nonactionable opinion when it specifically "detail[ed] the facts underlying it" by, for example, noting that the statement was "based upon the following," and identifying a quote (record citation and quotation marks omitted)); *Bellavia Blatt*, 151 F. Supp. 3d at 295–96 (determining that the statements at issue were non-actionable opinion when they were posted on Facebook in response to an article soliciting opinions, and for any statements "not . . . confine[d] . . . to responding to information disclosed in the [linked article]," the defendant "made clear that any alternative basis for her comments [was] founded in rumor" by using qualifiers such as "word [on] the street," "reputation," and "what is being whispered" (record citation and emphasis omitted)).  Moreover, when taken in combination with Moving Defendant's question of whether Plaintiff was operating an "underage crack whore brothel," and his post of Plaintiff's mugshot with the comment, "[c]rack head [s]lasher," (Oct. 9, 2017 Post A; Oct. 9, 2017 Post B), Moving Defendant's statements could certainly "lead the reader to draw an inference that is damaging to . . . [P]laintiff." *Macineirghe v. County of Suffolk*, No. 13-CV-1512, 2015 WL 4459456, at *10 (E.D.N.Y. July 21, 2015); *see also Herbert v. Lando*, 781 F.2d 298, 307 (2d Cir. 1986) ("A combination of individual statements which in themselves may not be defamatory might lead the reader to draw an inference that is damaging to the plaintiff."); *Partridge v. State of New York*, 100 N.Y.S.3d 730 (App. Div. 2019) (finding that defamation was implied when the placement of a photograph by the State Police of the plaintiff

on a Facebook page suggested that the plaintiff had committed sex crimes against children when he actually had not).

Finally, although courts have "noted that statements made online in blogs or forum boards are more likely to be interpreted as opinion," courts have also found that such statements may qualify as defamation.  *See, e.g., Watson v. N.Y. Doe 1*, 439 F. Supp. 3d 152, 162 (S.D.N.Y. 2020) (finding that a defendant's Facebook comments could "reasonably be read to suggest that [the defendant] intended to endorse the alleged defamatory statement that the plaintiff sexually assaulted women"); *Goldman*, 417 F. Supp. 3d at 173 (finding that the plaintiff stated a claim of defamation when the defendant published "numerous statements" on Facebook accusing the plaintiff of rape); *Krusen v. Moss*, 105 N.Y.S.3d 607 (App. Div. 2019) (finding that a statement on Facebook that the plaintiff was "pilfering free gas from taxpayers" was "susceptible to a defamatory meaning, in as much as it conveys, at a minimum, serious impropriety and, at worst, criminal behavior" (citations, alterations, and quotation marks omitted)).

Accordingly, construing Plaintiff's SAC liberally, and drawing all reasonable inferences in Plaintiff's favor, the Court finds that the context in which Moving Defendant's statement was made "plausibly suggests that it is based on . . . facts that are challenged as untrue, and, therefore, the statement is not per se barred as a 'pure opinion.'"  *Germain*, 111 F. Supp. 3d at 536.  As such, the Court cannot say that there is no "reading of the [SAC that] supports [Plaintiff's] defamation claim."  *Davis*, 22 N.E.3d at 1006.

### b.  Identification of Plaintiff and Publication

Moving Defendant argues that Plaintiff is not specifically identified in his exchange with Rhulen, that the photograph of his driveway would be recognizable only by people "intimately familiar with the . . . driveway from this particular angle," and that the snapshot posted by

22

Rhulen of Plaintiff's address and home data is of "poor print quality," and it is therefore impossible to confirm that it actually provides Plaintiff's address.  (Def.'s Mem. 14–15.)

   In order to state a claim of defamation, the SAC must allege that the defamatory statement was "of and concerning" Plaintiff, "such that those who know him would recognize he was the target of the libel." *Goldman*, 417 F. Supp. 3d at 172 (citations omitted).  "It is not necessary that the world should understand the libel; it is sufficient if those who know . . . [P]laintiff can make out that []he is the person meant." *Elias v. Rolling Stone LLC*, 872 F.3d 97, 105 (2d Cir. 2017) (quotation marks omitted) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).  The "of and concerning" question is typically an issue for the jury, but "the court may properly dismiss an action where the libelous statement is 'incapable of supporting a jury's finding' that it refers to the plaintiff." *Goldman*, 417 F. Supp. 3d at 172 (citation omitted). Although Rhulen's and Senator's posts do not identify Plaintiff by name, Plaintiff explicitly alleges that the image posted by Rhulen included his home, address, and data on his house. (SAC ¶ 6.)  Therefore, "[i]t is plausible that a reader who knew [Plaintiff] could identify him based on" this information. *Elias*, 872 F.3d at 106 (finding that an article referencing, inter alia, the location of the plaintiff's bedroom within his fraternity house was sufficient to suggest that a reader who knew the plaintiff could identify him based on the descriptions in the article); *Dalbec v. Gentleman's Companion, Inc.*, 828 F.2d 921, 923 (2d Cir. 1987) (finding that a statement identifying the plaintiff by her maiden name and address qualified as "of and concerning" the plaintiff because the audience "need[ed] only believe that it was about her").[8]

---

[8] Moving Defendant argues that the image quality of the home information posted by Rhulen should preclude the Court from finding that Moving Defendant's statement was plausibly "of and concerning Plaintiff," because it is impossible to decipher the information on Rhulen's post.  (Def.'s Mem. 14.)  However, Plaintiff alleges that the information posted by Rhulen

Moreover, even if the home information posted by Rhulen was insufficient to identify Plaintiff, Moving Defendant also posted an image of Plaintiff's mugshot in the same thread, which appears directly after the comment at issue.  (Oct. 9, 2017 Post C.)  *See Ward v. Klein*, 809 N.Y.S.2d 828, 831 (Sup. Ct. 2005) (finding that although the plaintiff was not identified in a documentary by name, the "juxtaposition of [the] plaintiff's photographs alongside commentary . . . [was] susceptible of a defamatory meaning"); *Zucker v. Rockland County*, 489 N.Y.S.2d 308, 309 (App. Div. 1985) (finding that the plaintiff was identifiable in an article containing alleged libelous statements when the article included a photograph in which the plaintiff was identifiable).  Additionally, to the extent Moving Defendant attempts to assert that because the Facebook exchange was a "one-on-one conversation," (Def.'s Mem. 4–5), it was not published to a third party, this argument is unavailing because, according to Plaintiff, the page on which the exchange was posted is viewable by its more than 10,000 "subscribers."  (SAC ¶ 2.) *See Goldman*, 417 F. Supp. 3d at 173 (noting that the defendant's allegedly false accusations on Facebook were viewable by "hundreds or thousands of people" (citation omitted)).

### c.  Defamation Per Se

As stated, under New York Law, "words are per se defamatory if they import criminal activity, impute certain types of diseases, tend to injure a party's trade, occupation, or business, or import certain sexual conduct."  *Campanella,* 853 F. Supp. 2d at 371 (citing *Epifani,* 882 N.Y.S.2d at 242); *see also Goldman*, 417 F. Supp. 3d at 171 ("Statements that falsely charge plaintiffs with 'serious' criminal activity are defamatory per se." (citations omitted)).  "A crime is 'serious' for the purposes of the defamation laws if it is (a) punishable by imprisonment in a

---

included "[his] house[] [and his] address," (SAC ¶ 7), which the Court must take as true in deciding the instant Motion.

state or federal institution, or (b) regarded by public opinion as involving moral turpitude."

*Conti v. Doe*, No. 17-CV-9268, 2019 WL 952281, at *7 (S.D.N.Y. Feb. 27, 2019) (citation and

some quotation marks omitted).  Here, even if the Court assumes that the term "child abuse" was

not sufficiently defined in the allegedly libelous statement, selling drugs certainly meets the bar

for a crime "punishable by imprisonment in a state or federal institution."  *Id.*  Accordingly,

Plaintiff need not plead special damages because he has alleged statements that may constitute

libel per se.[9]

### III.  Conclusion

For the foregoing reasons, Defendants' Motion To Dismiss is denied.  The Court will

hold a Status Conference in this Action on October 22, 2020 at 12:00 p.m.

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No.

34), and to mail a copy of this Opinion & Order to Plaintiff.

SO ORDERED.

DATED:      September 23, 2020
                   White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[9] Throughout the SAC, Plaintiff references a conspiracy between Defendants.  (*See* SAC ¶¶ 10 (alleging that Mirra acted "in collaboration with . . . Senator"), 15 ("[D]efendants have conspired with persons of interest via text communication, by contacting third parties, eventually creating a shared fake narrative and set of practices that eventually allowed them to work in concert . . . to promulgate their malicious libels . . . .").)  Therefore, Moving Defendant also argues that Plaintiff has not stated a claim for conspiracy.  (Def.'s Mem. 18.)  However, Plaintiff clarified in his Opposition that he "tells of the 'conspiracy' between Defendants to create a fake Facebook page . . . , but not as a distinct cause of action," and that his "purpose in presenting these materials is to illustrate the intent, . . . premeditation, . . . planning, and the pattern of behavior by . . . [D]efendants in their efforts to defame . . . Plaintiff."  (Pl.'s Mem. 14–15.)  Thus, the Court does not consider Plaintiff's allegations of conspiracy as a separate claim herein.